

2007 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

11-28-2007

# In Re: Rocco

Precedential or Non-Precedential: Non-Precedential

Docket No. 06-2438

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2007

Recommended Citation

"In Re: Rocco " (2007). *2007 Decisions*. Paper 184.
http://digitalcommons.law.villanova.edu/thirdcircuit_2007/184

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova University School of Law Digital Repository. It has been accepted for inclusion in 2007 Decisions by an authorized administrator of Villanova University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

NON PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

No. 06-2438

IN RE:   JOSEPH F. ROCCO;
CHRISTINA ROCCO,

Appellants

v.

J.P. MORGAN CHASE BANK as trustee
for the Truman Capital Mortgage Loan Trust

Appeal from the United States Court
for the Western District of Pennsylvania
(D.C. No. 05-cv-00366)
District Judge: Honorable David S. Cercone

Submitted Under Third Circuit LAR 34.1(a)
September 27, 2007

Before: AMBRO, JORDAN and ROTH, *Circuit Judges.*

(Filed: November 28, 2007)

OPINION OF THE COURT

JORDAN, *Circuit Judge*

Debtors Joseph and Christina Rocco (the "Roccos") appeal from the order of the

District Court for the Western District of Pennsylvania affirming the order of the

Bankruptcy Court for the Western District of Pennsylvania, which granted the Motion for Relief from the Automatic Stay to Proceed with Eviction filed by J.P. Morgan Chase Bank ("J.P. Morgan"), a creditor of the Roccos. For the reasons that follow, we will affirm.

## I.

The Roccos refinanced the mortgage on their residence in Latrobe, Pennsylvania on August 3, 2000, and defaulted on that mortgage in the fall of 2003. J.P. Morgan, the owner of the mortgage at the time of the default, got a foreclosure judgment against the Roccos in November of 2003. The Roccos filed their initial petition for bankruptcy under Chapter 13 of the Bankruptcy Code on January 2, 2004 to stop a foreclosure sale scheduled for January 5, 2004. That petition was dismissed on February 3, 2004, due to the Roccos' failure to provide required information. A sheriff's sale took place in early March, 2004, at which J.P. Morgan purchased the property for one dollar. The Roccos did not dispute that, at the time of the foreclosure, they owed J.P. Morgan a total of approximately $137,490 in principal, interest, escrow, and fees, and that the property was worth approximately $137,500.[1] J.P. Morgan recorded the deed in early April 2004, just before the Roccos filed their second Chapter 13 petition on April 13, 2004.

---

[1] Before the District Court, the Roccos apparently tried to claim that the property was worth more than $137,500, but also stated that they had no equity in the property. They do not make that claim here.

The Roccos filed an adversary complaint against J.P. Morgan and others on May 13, 2004, alleging that the sheriff's sale constituted a preferential and fraudulent transfer in violation of 11 U.S.C. §§ 547 and 548,[2] and alleging that their lender's conduct at the time the mortgage was executed violated the Truth-in-Lending Act, 15 U.S.C. § 1601, et seq., and Pennsylvania's Unfair Trade Practices Act, 73 P.A.C.S.A. 201-1, et seq., and constituted fraud and civil conspiracy. On May 18, 2004, J.P. Morgan filed its Motion for Relief from the Automatic Stay to Proceed with Eviction. The Roccos opposed that motion, arguing that the sheriff's sale was collusive, and that the claims they made in their adversary complaint should prevent the stay from being lifted.

The Bankruptcy Court granted J.P. Morgan's motion, finding that the Roccos did not have standing to object to relief from the stay because J.P. Morgan's purchase of the property and recording of the deed meant that they no longer had any legal or equitable interest in the property. The Bankruptcy Court also found that there was cause to lift the stay, and that J.P. Morgan lacked adequate protection. Furthermore, the Bankruptcy Court found that the sheriff's sale was not a preferential transfer. The Bankruptcy Court determined that the Roccos' non-bankruptcy claims, including those under the Truth-in-Lending Act, could have been raised in the state foreclosure proceedings, and thus could not be raised in bankruptcy to avoid the non-collusive foreclosure sale. As a result, the Bankruptcy Court found that because the Roccos no longer possessed any interest in the

---

[2] In their brief to the District Court, the Roccos stated that they are no longer pursuing a claim under 11 U.S.C. § 548.

property, they lacked standing to object to relief from the automatic stay, and that cause existed to lift the stay.

The District Court affirmed the Bankruptcy Court's decision. The District Court found that there was cause for lifting the stay, and that J.P. Morgan lacked adequate protection. The Court also noted that the Roccos' allegations about irregularities in their initial mortgage should have been brought and resolved in the state court foreclosure action, and that the foreclosure sale was not a preferential transfer.

## II.

We have jurisdiction over this case under 28 U.S.C. § 158. We exercise plenary review over the District Court's determinations, and "[i]n reviewing the bankruptcy court's determinations, we exercise the same standard of review as the district court." *In re Trans World Airlines, Inc.*, 145 F.3d 124, 131 (3d Cir. 1998). We review the Bankruptcy Court's decision to lift the automatic stay for abuse of discretion. *In re Myers*, 491 F.3d 120, 128 (3d Cir. 2007) ("Whether to annul the automatic stay is a decision committed to the bankruptcy court's discretion, and may be reversed only for abuse of that discretion."). "An abuse of discretion arises when the district court's decision 'rests upon a clearly erroneous finding of fact, an errant conclusion of law or an improper application of law to fact.'" *Oddi v. Ford Motor Co.*, 234 F.3d 136, 146 (3d Cir. 2000). We exercise plenary review over questions of law. *Calhoun v. Yamaha Motor Corp., U.S.A.*, 350 F.3d 316, 325 (3d Cir. 2003).

4

The Roccos assert that the District Court abused its discretion when it lifted the automatic stay. They claim that there was no cause to lift the stay because the transfer of the property to J.P. Morgan at the sheriff's sale was a preferential transfer, and thus that the transfer could be avoided. They argue that, even though J.P. Morgan was owed an amount almost identical to the value of the house, the amount owed should be reduced because of the allegations in their adversary complaint, including the assertion that their lender committed Truth-in-Lending Act violations. The Roccos' arguments are without merit.

A.

Under 11 U.S.C. § 362(d)(1), the automatic stay can be lifted "for cause, including the lack of adequate protection of an interest in property of such party in interest[.]" Here, J.P. Morgan had purchased the property at a sheriff's sale, and had recorded the deed to the property. It thus acquired the right to possess the property when the deed was executed and delivered. *See Butler v. Lomas and Nettleton Co.*, 862 F.2d 1015, 1019 (3d Cir. 1988) (the right to possession of property passes to a sheriff's sale purchaser when the sheriff's deed is executed and delivered). Despite J.P. Morgan's right to the property, the Roccos continue living on the property without making any payments to J.P. Morgan.

The Roccos claim that their adversary proceeding offered J.P. Morgan adequate protection, because if the Roccos prevailed in that proceeding J.P. Morgan's interest in the property would be reduced, the foreclosure sale would be avoided as a preference, and J.P. Morgan would not be entitled to lift the automatic stay. Even if the Roccos' lawsuit

5

did provide some protection to J.P. Morgan's interests,[3] however, bankruptcy courts in this Circuit have held that a lawsuit is too speculative in nature to offer adequate protection. *See In re Turner*, 326 B.R. 563, 577-78 (Bankr.W.D. Pa. 2005) ("[L]itigation is highly speculative. It is uncertain when and at what pace the litigation will proceed and what the outcome will be."); *In re Ziegler*, 88 B.R. 67, 70 (Bankr. E.D. Pa. 1988) ("Debtor claims that the pending lawsuit adequately protects Hill's interests. We hold that such a speculative funding source is insufficient to provide adequate protection."). In general, and in this specific instance, we agree with that conclusion. Thus, the Bankruptcy Court did not abuse its discretion in finding that there was cause for lifting the stay and that the Roccos had not offered adequate protection.

## B.

The Roccos next assert that the automatic stay should not have been lifted because the sheriff's sale was an avoidable preference. *See In re Andrews*, 262 B.R. 299, 306 (Bankr. M.D. Pa. 2001) ("[T]he avoidance of the prepetition transfer moots the Defendant's request to lift the automatic stay[.]"). A transfer of the debtor's interest in property to a creditor is a preference and can be avoided where the transfer was made:

> (1) to or for the benefit of a creditor;
> (2) for or on account of an antecedent debt owed by the debtor before such transfer was made;
> (3) made while the debtor was insolvent;
> (4) made--

---

[3] We note that the Roccos' argument appears to show more how their own interests, rather than those of J.P. Morgan, are protected by the adversary action.

(A) on or within 90 days before the date of the filing of the petition; or

(B) between ninety days and one year before the date of the filing of the petition, if such creditor at the time of such transfer was an insider; and

(5) that enables such creditor to receive more than such creditor would receive if--

(A) the case were a case under chapter 7 of this title;

(B) the transfer had not been made; and

(C) such creditor received payment of such debt to the extent provided by the provisions of this title.

11 U.S.C. § 547(b).

It is clear here that the first four elements of that legal test are met. Thus, the only issue is whether J.P. Morgan received more than it would have if the estate were liquidated and distributed as in a chapter 7 bankruptcy. A debtor asserting that a transfer to a secured creditor is a preferential transfer will only succeed when the debtor can show that the debtor has equity in the property such that the creditor was oversecured, and that the trustee would therefore have sold the property to benefit the debtor's unsecured creditors. *See In re Rambo*, 297 B.R. 418, 433 (Bankr. E.D. Pa. 2003) (A trustee is instructed "to sell only those secured assets that will generate funds for the benefit of unsecured creditors."); *In re Union Meeting Partners*, 163 B.R. 229, 236-37 (Bankr. E.D. Pa. 1994) (A debtor asserting a transfer was preferential "cannot succeed if it is proven that (1) the creditor was fully secured; (2) the transfer was nothing more than a seizure of the secured creditor's collateral; or (3) the unsecured creditors would be paid in full in a Chapter 7 case.").

Determining "what a trustee would receive in a liquidation ... is fact intensive." *Rambo*, 297 B.R. at 432. The Bankruptcy Court found that the Roccos owed J.P. Morgan

approximately $137,490, and that the property was worth approximately $137,500, so that the Roccos had no equity in the property. In fact, it appears from the record that the Roccos did not previously dispute those values. Nevertheless, they now argue that they have a right of recoupment[4] that should reduce the amount they owed J.P. Morgan, thus making the transfer a preference under 11 U.S.C. § 547. Their asserted right of recoupment is premised on the claims they have asserted in their adversary complaint, including claims for violations of the Truth-in-Lending Act that allegedly occurred at the time they executed their mortgage. J.P. Morgan responds that the Truth-in-Lending Act and other non-bankruptcy claims could have been brought in the foreclosure action, and are therefore precluded.

We conclude that the Roccos' arguments are baseless. First, their Truth-in-Lending Act claim is untimely. Truth-in-Lending Act claims must be brought within one year, unless they are brought "in an action to collect the debt which was brought more than one year from the date of the occurrence of the violation as a matter of defense by recoupment or set-off in such action[.]" 15 U.S.C. § 1640(e). Thus, because their Truth-in-Lending Act claims were not made within one year of the making of their mortgage,

---

[4] Whether the Roccos claim is for "recoupment," which is "the recovery or regaining of something," Black's Law Dictionary 1280 (7th ed. 1999), or for "setoff," which is "a debtor's right to reduce the amount of a debt by any sum the creditor owes the debtor," Black's Law Dictionary 1376 (7th ed. 1999), is immaterial in this case, since the relief that they are actually requesting is to undo the foreclosure sale. Because they characterize their request for relief as "recoupment," however, that is how we will refer to it in this opinion.

the Roccos may only assert those claims as a defense to an action to collect the debt. *Id*.; *Randall*, 358 B.R. at 171-72. Here, J.P. Morgan has already foreclosed on the property and recorded the deed. Because J.P. Morgan's request to lift the automatic stay is not an action to collect a debt, the Roccos' Truth-in-Lending Act claim is untimely.

Furthermore, even if the Truth-in-Lending Act claim were timely, the Roccos' claims would still be barred under Pennsylvania law. In their adversary complaint, the Roccos have requested relief under the Truth-in-Lending Act, the Pennsylvania Unfair Trade Practices Act, and for fraud and civil conspiracy,[5] asserting that their claims entitle them to rescind their mortgage, recoup any amounts paid on the mortgage, and collect damages. A claim for rescission under the Truth-in-Lending Act can be brought in a foreclosure action. *See In re Soto*, 221 B.R. 343, 356 n.29 (Bankr. E.D. Pa. 1998) ("[A] judgment in Debtor's favor on the rescission claim would nullify the Bank's rights and interests as established by the [foreclosure] Judgment[.]"). Claims for money damages, including recoupment claims, on the other hand, cannot be brought in a foreclosure action. *See New York Guardian Mortg. Corp. v. Dietzel*, 524 A.2d 951, 953 (Pa. Super. 1987) ("[A] set-off for an alleged violation of the Truth-In-Lending Act cannot be asserted as a counter-claim in a mortgage foreclosure action.").

---

[5] It is unclear whether the Roccos intend to assert all of these claims here, since their brief to this Court argues only that they are entitled to relief under the Truth-in-Lending Act.

Regardless of how the Roccos style the relief they are seeking, it is clear that they could have asserted in the state law foreclosure action their underlying claims for violations of the Truth-in-Lending Act, the Pennsylvania Unfair Trade Practices Act, and for fraud. *In re Soto*, 221 B.R. at 356 n.29; *In re Faust*, 353 B.R. 94, 100 (Bankr. E.D. Pa. 2006) (finding that rescission claim under the Pennsylvania Unfair Trade Practices and Consumer Protection Law was precluded because favorable outcome on that claim would negate foreclosure judgment); *Green Tree Consumer Discount Co. v. Newton*, 909 A.2d 811, 814 (Pa. Super. 2006) ("Fraud in the inducement of the mortgage is clearly a permissible counterclaim under Rule 1148."). They now attempt to assert those same claims here, not to recover money damages but to undo the foreclosure judgment and to return the property to their bankruptcy estate. Under Pennsylvania law, such an action is barred by the doctrine of res judicata, because it would nullify the foreclosure judgment, and impair J.P. Morgan's rights as established in the foreclosure action.[6] *Del Turco v. Peoples Home Sav. Ass'n*, 478 A.2d 456, 463 (Pa. Super. 1984) (Claims that could have been brought as counterclaims in a previous action are barred by the doctrine of res judicata where "[t]he relationship between the counterclaim and the plaintiff's claim is

---

[6] We do not mean to assert that, in all cases, claims for violations of the Truth-in-Lending Act or for fraud that could have been brought in a state mortgage foreclosure proceeding are precluded in bankruptcy. *See In re Randall*, 358 B.R. 145, 161 (Bankr. E.D. Pa. 2006) (Allowing a claim for recoupment to adjust "[t]he amount due the mortgagee ... without affecting the validity of the mortgage itself, nor the right of the mortgagee to foreclose upon its judgment."). Here, however, the Roccos are not only attempting to change the amount due to J.P. Morgan, but to undo the foreclosure and sale altogether.

such that successful prosecution of the second action would nullify the initial judgment or would impair rights established in the initial action."). Thus, because the Roccos are precluded from claiming that they owe J.P. Morgan less than the value of their home, the transfer was not a preference under 11 U.S.C. § 547 and the automatic stay was properly lifted.

## III.

For the foregoing reasons, the judgment of the District Court will be affirmed.