## Perkins v. Beltway Capital, LLC

*Juanita V. Perkins*, pro se appellant.

*William D. Longo*, for appellee First Option Title Agency.

*Andrew Jay Soven* and *Alexis Gabrielle Cocco*, for appellee First Franklin Financial.

*Henry Falkner Reichner* and *Michael Olinik*, for appellee Deutsche Bank as trustee.

*Daniel S. Bernheim* and *Rachel Colancecco Heinrich*, for appellee Beltway Capital.

TERESHKO, *J.*, April 16, 2013—

## PROCEDURAL HISTORY

Plaintiff, Juanita Perkins appeals from this court's orders dated October 4, 2012, wherein this court granted defendants Beltway Capital, LLC and Mortgage Electronic Registration System's motion for summary judgment as well as a motion to compel settlement submitted by defendant First Franklin Financial Corporation.

## FACTUAL BACKGROUND

The instant matter arises out of alleged fraud in connection with a residential loan. In describing how she carne to apply for the loan at issue, plaintiff explained that she was in line at a Sunoco station when she heard two men discussing available mortgages in her neighborhood. (Plaintiff's deposition attached as exhibit "N" to defendant's motion for summary judgment, pg. 26, line

11 — page 27, line 6; pg. 104, In. 24 — pg. 105, line 13). Plaintiff approached them, and one of the men gave Plaintiff a business card for Ivan Hicks, an employee of Assured Lending. (Plaintiff's deposition attached as Exhibit "N" to defendant's motion for summary judgment, pg. 27, lines 5 — 24). Plaintiff hoped that by refinancing she could pay a number of small bills and perform some renovations on her home. (Plaintiff's deposition attached as Exhibit "N" to Defendant's Motion for summary judgment, pg. 31, lines 2-5; pg. 171, line 4 — pg. 172, line 11).

Shortly after the discussion at Sunoco, plaintiff contacted Ivan Hicks, and Mr. Hicks subsequently met plaintiff once at her home and twice thereafter at her place of work. (Plaintiff's deposition attached as Exhibit "N" to defendant's Motion for summary judgment, pg. 28, line 1 — page 29, line 24). Plaintiff reported that upon their initial meeting, she provided Mr. Hicks with documentation of her salary and a copy of the deed to her home. *Id.*

On examination of plaintiff's residential loan application, her gross monthly income is listed as $4,500 per month. (Uniform Residential Loan Application attached as exhibit "A" to defendant's motion for summary judgment). Plaintiff's employers are listed as St. Nicholas and Lane Bryant, and her monthly income from Lane Bryant is reported to be $2000 per month. (Uniform Residential Loan Application attached as exhibit "A" to defendant's motion for summary judgment). The itemization of plaintiff's gross monthly income lists her base employment income as $2500, and her "Other" income as $2000 per month. (Uniform Residential Loan Application attached as exhibit "A" to defendant's motion

for summary judgment).

Plaintiff's complaint alleges that her sole source of income at the time she applied for the loan was the $800 per month she earned as a sales assistant for Lane Bryant. (Plaintiff's second amended complaint, ¶¶71-72). However, as plaintiff stated in her deposition, she also collected her late husband's pension. (Plaintiff's deposition attached as exhibit "N" to defendant's motion for summary judgment, pg. 17, line 4 — page 21, line 19).

Furthermore, plaintiff earned income as a cantor at St. Nicholas of Tolentine Church, which is listed under the employment section of her loan application. Plaintiff reported singing at three services per week during the summer and two services per week during the remainder of the year, for which she earned $70 per service, resulting in additional income of $560 to $840 per month depending on the season. (Plaintiff's deposition attached as exhibit "N" to defendant's motion for summary judgment, pg. 17, lines 8 — 18). Plaintiff also sang at weddings and funerals as needed, for which she was paid $185 per wedding and $85 per funeral. (Plaintiff's deposition attached as exhibit "N" to defendant's motion for summary judgment, pg. 18, line 20 — page 19, line 3). Plaintiff reported singing at one to three funerals per week, which would result in additional income of $340 — $1020 per month. (Plaintiff's deposition attached as exhibit "N" to defendant's motion for summary judgment, pg. 99, line 7 — page 100, line 4).

Plaintiff was approved for a residential loan in the amount of $225,000, with $69,350.51 in cash to plaintiff after plaintiff's prior mortgage and some smaller bills

were paid. (Plaintiff's deposition attached as Exhibit "N" to defendant's motion for summary judgment, pg. 61, line 19 — 62. line 19). Plaintiff's monthly payment obligation was $1750.03, which was $830.36 greater than her previous monthly mortgage payment to Aames Home Loan. Prior to the 2006 transaction, plaintiff had been involved in eight prior loans on this property. (Plaintiff's deposition attached as exhibit "N" to defendant's motion for summary judgment, pg. 134, line 22 — page 135, line 18). Plaintiff's original mortgage on the property was obtained on January 31, 1975 in the amount of $7500.00. In her deposition, plaintiff identified the seven subsequent loans on the property as refinance mortgages. They are as follows:

1) August 10, 1976 — $10,450.00

2) February 8, 1983 — $2,426.48

3) March 28, 1994 — $4,027.28

4) July 29, 1994 — $46,410.17

5) August 26, 1997 — $46,699.29

6) January 17, 2002 — $50,732.14

7) September 21, 2004- $128,000.

Plaintiff's deposition attached as Exhibit "N" to defendant's motion for summary judgment, pg. 123, line 4 — page 125, line 14.

At the time that plaintiff completed the loan application on May 25, 2006, she expected to be able to make the monthly loan payments because she had secured a new

job as a presenter for a drug and alcohol program with a salary of $50,000 per year; however, plaintiff lost the position. (Plaintiff's deposition attached as exhibit "N" to defendant's motion for summary judgment, pg. 59, line 6 — page 60, line 21).

The loan closing occurred on May 25, 2006 at plaintiff's home. (Plaintiff's deposition attached as exhibit "N" to defendant's motion for summary judgment, pg. 56, lines 7 — 23). Plaintiff explained that Kamilla Gill, an employee of First Option Title Agency, LLC (hereinafter "First Option") who was acting as an agent of First Franklin who was the actual lender, brought the necessary paperwork to her home; however, plaintiff alleges that she was unaware of First Franklin's involvement and believed Ms. Gill was employed by Assured Lending. (Plaintiff's deposition attached as exhibit "N" to defendant's motion for summary judgment, pg. 57, lines 3 — 17). Plaintiff further alleges that she did not know that Mr. Hicks was a broker, but believed that he worked with a "short lending company" who worked along with a bank. (Plaintiff's deposition attached as exhibit "N" to defendant's motion for summary judgment, pg. 67, lines 1 — 19).

At the time plaintiff obtained the loan in question, First Franklin, plaintiff's lender, and Deutsche Bank were acting as joint venturers for the purpose of obtaining loans to be used to populate the Real Estate Mortgage Investment Conduit, consisting of a pool of assets comprised of mortgage loans under a pooling and servicing agreement dated August 1, 2006. (Plaintiff's second amended complaint, ¶20). The assets in the Real Estate Mortgage and Investment Conduit were held under the provisions of

the pooling and servicing agreement by Deutsche Bank as trustee for the benefit of the investors. *Id.*

Plaintiff's mortgage describes plaintiff as the "Borrower," First Franklin as the "Lender," and Mortgage Electronic Registration Systems, Inc. as "a separate corporation that is acting solely as a nominee for Lender and Lender's successors and assigns." (Plaintiff's second amended complaint, ¶112). Assured Lending was acting as a broker, and the settlement statement includes a broker fee to Assured Lending in the amount of $11,250. (Settlement statement attached as exhibit "D" to defendant's motion for summary judgment).

At the time the loan closing occurred, plaintiff received $69,350.51, a sum which she spent in its entirety. Plaintiff reported that she paid some small bills, replaced the windows on her home and gave some of the money to her mother and sister. (Plaintiff's deposition attached as exhibit "N" to defendant's motion for summary judgment, pg. 86, line 12 — pg. 92, line 12).

Plaintiff made only four monthly payments in the amount of $1750.03 and has not made payments on the loan since November 1, 2006. On or about February 28, 2007, Deutsche Bank filed a complaint in mortgage foreclosure against plaintiff. (Plaintiff's second amended complaint, ¶176). At the time that Deutsche Bank filed the complaint in mortgage foreclosure, the principal balance on the mortgage was $224,462.87, and the interest due was $7,989.41, with late charges in the amount of $262.50. Plaintiff testified at her deposition that she did not have any funds to pay the balance of the loan as she had spent the

cash she received at closing, nor was she willing to move out of her home. (Plaintiff's deposition attached as exhibit "N" to defendant's motion for summary judgment, pg. 160, lines 5 — 12). On or about June 18, 2007, Deutsche Bank obtained a default judgment in mortgage foreclosure against plaintiff in the amount of $240,176.15. (Plaintiff's second amended complaint, ¶187).

By an assignment dated August 28, 2007 and recorded with the Department of Records on September 7, 2007, MERS assigned plaintiff's mortgage to "Deutsche Bank National Trust Company as Trustee for First Franklin Mortgage Loan Trust 2006-Ff11." (Plaintiff's second amended complaint, ¶165).[2] On or about August 8, 2008, Home Loan Services, Inc. assigned the mortgage from Deutsche Bank in its capacity as trustee for First Franklin Mortgage Loan Trust 2006-Ff11 to Beltway Capital, LLC. (Plaintiff's second amended complaint, ¶208).

Plaintiff commenced this action by filing a 287 paragraph complaint on November 25, 2008, alleging that defendants violated the Truth in Lending Act and the Pennsylvania Unfair Trade Practices Consumer Protection Law, most notably by charging her unlawful fees in connection with the loan closing, utilizing a broker without her knowledge, improperly verifying her income and promising her a fixed rate, which she was subsequently denied. (*See* docket).

The action was removed to U.S. District Court on

---

2. Plaintiff contends in her complaint that this assignment was ineffective. (Plaintiff's second amended complaint, ¶¶166-175). However, the assignment was executed by Francis Hallinan in his capacity as Assistant Secretary and Vice President of MERS, and his authority to effect the assignment is detailed in his affidavit attached as exhibit "G" to defendant's motion for summary judgment.

April 8, 2009 at the request of First Franklin Financial Corporation (hereinafter "First Franklin.") (*See* docket). On March 28, 2011, the case was remanded to the Court of Common Pleas of Philadelphia. (*See* docket).

After plaintiff filed a second amended complaint on May 31, 2011, First Franklin filed preliminary objections to plaintiff's on June 20, 2011, and Deutsche Bank did likewise on June 21, 2011. (*See* docket). Beltway Capital and MERS also filed a motion for summary judgment on August 1, 2011. (*See* docket).

On October 19, 2011, after being advised of a settlement as to all defendants, less Assured Lending, Inc., the Honorable Howland Abramson continued the case for thirty days to permit the filing of a motion for a default judgment against Assured Lending, Inc. (*See* docket). Judge Abramson further ordered that if plaintiff did not move for a default judgment within thirty days, the case against Assured Lending, Inc. could be non-prossed and marked disposed. (*See* docket). Plaintiff filed the motion for default judgment against Assured Lending, Inc. on November 19, 2011. (*See* docket). On December 7, 2011, Judge Abramson dismissed both the motion for summary judgment filed by Beltway and MERS as well as the preliminary objections filed by Deutsche Bank as moot because of the ostensible settlement agreement. (*See* docket). On January 17, 2012, this court entered judgment in favor of plaintiff and against defendant, Assured Lending, Inc. in the amount of $83,000 plus reasonable attorney's fees and costs, which was remitted to plaintiff. (*See* docket).

On February 29, 2012, after a review of the docket and correspondence from Beltway, this court concluded preliminarily that all the terms of the settlement agreement may not have been satisfied, thus rendering the agreement potentially null and void. (*See* docket). Therefore, this court ordered that the summary judgment motion filed under Control # 11080257 and preliminary objections filed under Control # 11091070 be reinstated and that plaintiff's complaint be reinstated and returned to active status. (*See* docket).

On April 4, 2012, this court sustained the preliminary objections filed by Deutsche Bank under Control # 11091070, thereby dismissing all claims against Deutsche Bank. (*See* docket).

On April 16, 2012, plaintiff's counsel filed a motion to withdraw his appearance. (*See* docket). On April 20, 2012, this court issued a rule to show cause why plaintiff's counsel should not be permitted to withdraw, staying the proceedings pending final resolution of the motion to withdraw. (*See* docket). The rule returnable was held on May 24, 2012, and this court permitted plaintiff's counsel to withdraw his appearance. (*See* docket).

On May 24, 2012, First Franklin filed a motion to enforce the settlement. (*See* docket). On July 12, 2012, this court scheduled oral argument on the summary judgment motion filed by Beltway and MERS as well as the motion to enforce settlement filed by First Franklin to occur on July 24, 2012. (*See* docket).

On October 4, 2012, this court granted First Franklin's motion to compel settlement, dismissing all claims

against First Franklin with prejudice. (*See* docket). Also on October 4, 2012, this court granted the motion for summary judgment submitted by Beltway and MERS, dismissing plaintiff's second amended complaint with prejudice. (*See* docket). On November 5, 2012, plaintiff appealed both of this court's October 4, 2012 orders and filed two motions for reconsideration. (*See* docket). On November 19, 2012, this court ordered plaintiff to file her concise statement of matters complained of on appeal. (*See* docket). On December 12, 2012, plaintiff filed two such statements. (*See* docket).

The issues to be addressed on appeal are:

1) Whether this court erred by granting Beltway Capital, LLC and Mortgage Electronic Registration System's Motion for summary judgment; and

2) Whether this court erred by granted First Franklin Financial Corporation's motion to enforce settlement.

LEGAL ANALYSIS

Summary judgment is governed by Pennsylvania Rule of Civil Procedure 1035.2, which states,

After the relevant pleadings are closed, but within such time as not to unreasonably delay trial, any party may move for summary judgment in whole or in part as a matter of law

(1) whenever there is no genuine issue of any material fact as to a necessary element of the cause of action or defense which could be established by additional discovery or expert report, or

(2) if, after the completion of discovery relevant to the motion, including the production of expert reports, an adverse party who will bear the burden of proof at trial has failed to produce evidence of facts essential to the cause of action or defense which in a jury trial would require the issues to be submitted to a jury. Pa. R.C.P. 1035.2

In determining whether summary judgment is proper, the record is viewed in the light most favorable to the non-moving party, and all doubts as to whether a genuine issue of material fact exists are resolved against the moving party. *Pennsylvania State Univ. v. County of Centre*, 532 Pa. 142, 615 A.2d 303, 304 (Pa. 1992). The appellate court's scope of review is plenary. *O'Donoghue v. Laurel Savings Ass'n*, 556 Pa. 349, 728 A.2d 914, 916 (Pa. 1999). A trial court's decision to grant or deny a motion for summary judgment will only be reversed where the lower court committed an error of law or abused its discretion. *Cochran v. GAF Corp.*, 542 Pa. 210, 666 A.2d 245, 248 (Pa. 1995).

Plaintiff contends that this court erred by granting summary judgment in favor of Beltway Capital, LLC and Mortgage Electronic Registration System. Summary judgment was properly granted because plaintiff's claims under the Truth in Lending Act and the Unfair Trade Practices and Consumer Protection Law ("UTPCPL") were required to be raised within the context of the foreclosure action.

Deutsche Bank assigned plaintiff's mortgage to Beltway on or about March 18, 2008. This occurred after

judgment in foreclosure by default was properly entered against plaintiff on June 18, 2007, and damages were assessed by the Honorable Jane Greenspan. (*See* docket at #070203268). Plaintiff did not file a petition to either open or strike the default judgment. (*See* docket at #070203268).

After a judgment in mortgage foreclosure has been entered, rescission under the Truth in Lending Act is prohibited. *Stuart v. Decision One Mortgage Company, LLC,* 2009 Pa. Super. 103, 975 A.2d 1151 (2009). In *Stuart,* plaintiffs attempted to exercise their right to rescind a home mortgage after judgment in mortgage foreclosure was entered by default. plaintiffs failed to file a petition to either open or strike the default judgment. The trial judge granted defendants' motion for judgment on the pleadings on the basis that the plaintiffs' claim was barred by res judicata, and the Superior Court affirmed. *Stuart v. Decision One Mortgage Company, LLC,* 2009 Pa. Super. 103, Pl, 975 A.2d 1151, 1151-52 (2009). The Superior Court reasoned,

> Whether or not the Stuarts raised the claim of violation of the TILA [Truth in Lending Act] in the foreclosure proceedings, they *could have* raised the defense by asking for rescission. *Res judicata* applies not only to claims that were made but also to claims that *could have* been made. *See Wilkes v. Phoenix Home Life Mut. Ins. Co.,* 587 Pa. 590, 902 A.2d 366 (Pa. 2006); *Glynn v. Glynn,* 2001 Pa. Super. 359, 789 A.2d 242, 249 (Pa. Super. 2001); *Chada v. Chada,* 2000 Pa. Super. 186, 756 A.2d 39, 43 (Pa. Super. 2000).

*Stuart v. Decision One Mortgage Company, LLC,* 2009

Pa. Super. 103, P4, 975 A.2d 1151, 1152 (2009)(emphasis in original).

The facts in the instant matter are essentially those in *Stuart*. Plaintiff could have raised any violations of the Truth in Lending Act by defendants Beltway and MERS within the context of the foreclosure action but did not. Plaintiff's property was property foreclosed upon in 2007, thus cutting off any attempt by plaintiff to rescind the mortgage.

Plaintiff's right to cancel the mortgage loan under the UTPCPL is likewise barred by res judicata because plaintiff's claims under the UTPCPL could have been raised within the context of the mortgage foreclosure action. *Rocco v. JP Morgan Chase Bank*, 255 Fed. Appx. 638, 643, 2007 U.S. App. LEXIS 27445, P12-13 (2007) (holding that the res judicata doctrine applied to bar the debtors from pursuing UTPCPL claims in an attempt to undo the foreclosure judgment and void the sheriff's sale because those claims could have been pursued in the context of the foreclosure action).

Thus, in the case at bar this court concluded that permitting the litigation of plaintiff's claims under the TILA and UTPCPL within the context of this action would improperly nullify the foreclosure judgment because the claims could have been raised within the context of the foreclosure action and are thus barred pursuant to the doctrine of res judicata.

Furthermore, plaintiff's claims must also fail because there can be no assignee liability under the TILA or UTPCPL based on the facts alleged here. 15 USC 1641(a)

provides that:

> *any* civil action for a [TILA] violation...which may be brought against a creditor may be maintained against an assignee of such creditor only if the violation for which such action or proceeding is brought is apparent on the face of the disclosure statement ....

15 U.S.C. §1641(a).

In the instant matter, Beltway and MERS had no notice of alleged TILA disclosure violations at the time the mortgage was assigned; therefore, neither entity can be held liable for violations by the creditor.

In addition, defendants Beltway and MERS cannot be held liable for monetary damages under the TILA for failing to rescind plaintiff's mortgage at her request because:

> §1640(a) permits only a 'creditor' to be held liable for a monetary penalty or an award of attorney's fees for a TILA violation. Neither §1641 nor any other section provides for a statutory penalty or an award of attorney's fees to a plaintiff should an assignee fail to respond to a valid rescission notice.

*Brodo v. Bankers Trust Co.*, 847 F. Supp. 353, 359 (E.D. Pa. 1994).

Additionally, there can be no assignee liability under the UTPCPL; thus, plaintiff's claims against Beltway and MERS under the UTPCPL were properly dismissed. *See WM Specialty Mortgage v. Shuttleworth*, 82 Pa.D.&C.4th 129 (2007)(dismissing homeowner's counterclaim

for violations of the UTPCPL in a foreclosure action because the alleged violations were committed by the original lender not the foreclosing assignee); (Plaintiff's deposition attached as exhibit "N" to defendant's motion for summary judgment, pg. 60, line 13 — pg. 61, line 11).

In order to establish a violation of the catchall provision under the UTPCPL, 73 P.S. §201-2(4)(xxi), plaintiff must establish fraudulent or deceptive conduct engaged in by Beltway and MERS. *Bennett v. A.T. Masterpiece Homes at Broadsprings, LLC*, 2012 Pa. Super. 60, 40 A.3d 145, 156-57 (2012). Plaintiff cannot point to any misrepresentations made by Beltway or MERS or any interaction whatsoever with representatives of either entity; therefore, plaintiff cannot establish liability against Beltway and MERS under the UTPCPL.

Plaintiff's second issue complained of on appeal is that this court erred by granting First Franklin's motion to enforce the settlement agreement.

The enforceability of settlement agreements is governed by principles of contract law. *Century Inn, Inc. v. Century Inn Realty, Inc.*, 358 Pa. Super. 53, 516 A.2d 765, 767 (1986). The court will enforce a settlement if all of the material terms of the bargain are agreed upon. *McDonnell v. Ford Motor Co.*, 434 Pa. Super. 439, 445, 643 A.2d 1102 (1994). A settlement will not be set aside absent a clear showing of fraud, duress or mutual mistake. *Rago v. Nace*, 313 Pa. Super. 575, 578, 460 A.2d 337, 339 (1983)

In the instant matter, after two lengthy settlement conferences and various drafts of a proposed settlement

agreement, the parties agreed upon the finalized version of the settlement agreement on or about December 14, 2011. (First Franklin's motion to compel settlement, ¶7). The settlement agreement required plaintiff to obtain a reverse mortgage with the net proceeds from the reverse mortgage to be distributed to Beltway, in an amount not less than $100,000.[3] (Executed settlement agreement attached as exhibit "A" to First Franklin's motion to compel settlement). Any net proceeds over $100,000 would be distributed 50% to Beltway, 40% to First Franklin, 5% to First Option and 5% to Deutsche Bank. (Executed settlement agreement attached as exhibit "A" to First Franklin's motion to compel settlement).

Thus, per the terms of the settlement agreement, the $224,462.87 plus interest and penalties owed by plaintiff on the mortgage would be reduced to $100,000. Once plaintiff obtained the reverse mortgage, her financial obligations to defendants would be extinguished, and she would be permitted to remain in her home. At the time plaintiff entered into the settlement agreement, she had not made any payments on the mortgage since 2007, she did not remit any funds to defendants, and she was unwilling to leave her home.

The settlement agreement was circulated by counsel, and First Franklin, Deutsche Bank, Beltway and First Option executed the agreement. (First Franklin's motion

---

3. The cost to plaintiff to complete the repairs on her home required to obtain the reverse mortgage, the settlement costs, the cost of an appraisal, and any certifications required to obtain the reverse mortgage would also be subtracted from the net proceeds. (Executed settlement agreement attached as exhibit "A" to First Franklin's motion to compel settlement).

to compel settlement, ¶9). After plaintiff executed the settlement agreement, First Franklin sent a check to Beltway on February 17, 2012, which Beltway cashed. Deutsche Bank and First Option also sent checks to Beltway per the terms of the settlement agreement, and Beltway cashed those checks as well. (First Franklin's motion to compel settlement, ¶10).

Importantly, the executed settlement agreement provides,

C. In consideration of the mutual promises contained therein, the below parties agree to make the following payments to "Beltway Capital LLC" within 20 days of the execution of this Agreement and receipt of a W-9 from Beltway,;

1. First Franklin — $40,000;

2. First Option — $5,000;

3. Deutsche Bank — $5,000.

Once First Franklin, First Option, and Deutsche Bank have remitted the above amount, First Franklin, First Option and Deutsche Bank are fully released from this litigation and neither Perkins nor Beltway shall have any recourse against them should Perkins not be able to fulfill her promises under the Settlement Agreement.

First Franklin, First Option and Deutsche Bank remitted the agreed-upon amounts to Beltway; however, plaintiff failed to fulfill her obligations under the settlement agreement. Per the terms of the agreement, plaintiff has no recourse against First Franklin, First Option or Deutsche

Bank. There is no ambiguity in the settlement agreement, and plaintiff, represented by counsel at the time the settlement agreement was reached, does not make any allegations of fraud or duress that would serve to invalidate the settlement agreement. Thus, this court properly granted First Franklin's motion to compel settlement.

## CONCLUSION

For the foregoing reasons, this court respectfully requests that the October 4, 2012 orders granting defendants Beltway Capital, LLC and Mortgage Electronic Registration System's motion for summary judgment as well as a motion to compel settlement submitted by defendant First Franklin Financial Corporation be affirmed.